UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23188-CIV-MORENO/TORRES

CLARK S. CHENEY and JAMES C.
CALKINS,

        Plaintiffs,

vs.

IPD ANALYTICS, L.L.C.,
INTELLECTUAL PROPERTY
DEVELOPMENT, INC., AND
HOWARD BENJAMIN KRASS,

        Defendants.
_____/

REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION TO DISMISS IPD ANALYTICS' COUNTERCLAIMS

      This matter is before the Court Plaintiffs/Counter-Defendants' Motion to Dismiss IPD Analytics' Counterclaims [D.E. 62]. The Court has reviewed the motion, Defendant/Counter-Plaintiff's response, the reply, related authorities submitted by the parties, and the record in the case. For the foregoing reasons the motion to dismiss should be granted in part and denied in part.

## I.   BACKGROUND

      Plaintiff Clark S. Cheney ("Clark Cheney" or "Cheney") filed this matter in June 2008, in the United States District Court for the District of Columbia, asserting claims for breach of contract, fraudulent inducement, promissory estoppel, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Subsequently, due

to the presence of a valid forum selection clause in the underlying employment contract, the case was transferred to this district on October 10, 2008. On January 6, 2009, Cheney amended his complaint, adding James C. Calkins ("James Calkins" or "Calkins") as a Co-Plaintiff. Defendants answered the Complaint on January 26, 2009. [D.E. 56]. The answer included Counterclaim against Cheney for breach of contract and three claims against Calkins for breach of contract, breach of fiduciary duty and violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030(a)(5)(A).

Plaintiff Clark Cheney is a registered patent attorney and a member of the District of Columbia Bar. Plaintiff James Calkins is also a registered patent attorney and a member of both the District of Columbia and Texas Bars. Defendant IPD Analytics, L.L.C. ("Analytics") engages in the business reporting and analyzing patent litigation involving public companies, although the exact nature of its business remains a material dispute in this case. Defendant Intellectual Property Development, Inc. ("IPD") is the principal shareholder of Analytics. Defendant Howard Krass ("Krass") is the Chief Executive Officer of Analytics and the President of IPD.

According to the allegations listed in the First Amended Complaint [D.E. 43] ("Amended Complaint"), the gist of the controversy in this case stems from Defendants' breach of an employment contract and equity agreement with Plaintiff Cheney. Specifically, Defendants allegedly failed to fulfil their 401(k) matching obligations for 2007 and refused to grant Cheney equity ownership in Analytics, all in violation of the equity agreement entered between the parties.

The Counterclaim, however, asserts that Plaintiffs Cheney and Calkins breached the non-competition clauses of their employment agreements by directly

competing with Analytics within the one year period following their resignation from the company. Furthermore, Defendants allege that Plaintiff Calkins has breached fiduciary duties owned to Analytics by: 1) providing Cheney with substantial assistance with this lawsuit; 2) providing Cheney with substantial assistance in establishing a business to compete against Analytics; and 3) destroying thousands of computer files on Analytics' computer to conceal his disloyal actions. In addition, Defendants contend that destruction of these files constitutes violation of the CFAA.

Plaintiffs/Counter-Defendants move to dismiss all four counterclaims arguing that: 1) Counts I and II should be dismissed because both Plaintiffs are practicing law and cannot be restrained by non-competition agreements; 2) Count III should be dismissed because it fails to allege breach of any cognizable fiduciary duty, as well as, any damage that resulted from the alleged breach; and 3) Count IV CFAA claim should be dismissed because it fails to plead any interruption in service and damage to the integrity and availability of data. Also, in their reply,[1] Plaintiff Cheney raises an additional argument for dismissal of the breach of contract counter-claim. Cheney contends that the breach of contract counter-claim is moot because the non-competition clause of his employment agreement was enforceable for only one year following his termination of employment with Analytics. Therefore, because Cheney's employment

---

[1] The local rules clearly state that the reply should only address the matters raised in the response. *See* S.D. Fla. L.R. 7.1(C) ("reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); *see also Tallahassee Mem. Regional Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) ("it is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief"). However, because we granted Defendants' Motion for Leave to File Sur-Reply [D.E. 99] to address the newly raised issue, we will consider Cheney's mootness argument.

with Analytics ended on February 19, 2008, which is now more than one year ago, the breach of contract counter-claim against Cheney should be dismissed as moot.

## II. ANALYSIS

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65).

The Court must "view all the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Berry,* 497 F. Supp. 2d at 1364 (citing *Marshall Cty. Bd. of Educ. v. Marshall Co. Gas Dist.,* 992 F.2d 1172, 1174

(11th Cir. 1993)).  A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (internal citation omitted).

### A.   *Breach of Contract Claims*

Defendants' breach of contract counterclaims arise out of Plaintiffs' alleged breach of the non-competition clauses under their employment agreements. Plaintiffs' sole basis for dismissal of these claims is their assertion that practice of law cannot be restrained by non-competition clauses.  Plaintiffs are correct that Florida Rules of Professional Conduct prohibit attorneys from making agreements restricting the right to practice law following the termination of an employment relationship.  Fla. Bar R. 4-5.6.  The rule is identical to the American Bar Association's Model Rule of Professional Conduct 5.6.  Furthermore, numerous courts have invalidated such restrictions on right to practice law, finding them to be against public policy. *See, e.g., Dowd & Dowd, Ltd. v. Gleason*, 693 N.E. 2d 358 (Ill. 1998) (non-competition covenant contained in defendants' employment agreement, pursuant to which lawyers were prohibited in the two years following termination of their employment agreement from soliciting or endeavoring to entice away any of the corporations' clients without prior written consent, violated Rule 5.6).

The problem with Plaintiffs' argument is that it requires factual inquiry into the nature of Plaintiffs' business.  Clearly, if Plaintiffs' practices do not constitute "practice of law," Rule 5.6 is not implicated in the analysis of the non-competition clause's

validity. Therefore, Plaintiffs' argument is raised prematurely and is better suited for a motion for summary judgment. *See, e.g., Flava Works, Inc. v. City of Miami, Fla.*, 559 F. Supp. 2d 1318, 1323 (S.D. Fla. 2008) (need for factual inquiry precludes motion to dismiss).

Next, Cheney argues that the breach of contract counter-claim against him became moot on February 19, 2009. According to Cheney, it is undisputed that the non-competition clause was valid "for a period of one year following his termination or resignation from IPD Analytics." Therefore, because Cheney's employment with Analytics ended on February 19, 2008, any claim based on the non-competition clause expired on its own a year from that date.

Cheney appears to maintain that any breach of contract claim brought pursuant to a violation of a non-competition clause must be adjudicated prior to the expiration of that clause. Therefore, according to Cheney, although Defendants filed their counter-claims on January 26, 2009, the breach of contract claim against Cheney expired "on its own" on February 19, 2009. Clearly, Cheney's argument has no merit.

Under Florida law, an injunction is the normal remedy for breach of the non-competition covenant. *Graphic Business Systems. Inc. v. Rogge*, 418 So. 2d 1084, 1086 (Fla. 2d DCA 1982). Furthermore, Florida caselaw permits a non-compete period to be equitably extended to allow for what was intended in the bargain. *Sunbelt Rentals, Inc. v. Dirienzo*, 487 F. Supp. 2d 1361, 1363 (S.D. Fla. 2007) (quoting *Michele Pommier Models, Inc. v. Diel*, 886 So. 2d 993, 995 (Fla. 3d DCA 2004)). Because the remedy and the extension are equitable in nature, its grant is left to the discretion of the courts. *Id*.

In order for Defendants to prevail on their breach of contract Count I counterclaim, they must establish that Cheney breached the non-competition clause sometime between February 19, 2008 (date of his employment termination with Analytics) and February 19, 2009. In their Counterclaim, Defendants specifically allege that Cheney and Calkins began contacting the subscribers of IPD Analytics on January 8, 2009. *See* Counterclaim ¶ 17. According to Defendants, Cheney's actions constituted a violation of the non-competition clause. Because we must "view all the allegations of the [counterclaim] in the light most favorable to the [counter-plaintiff], consider the allegations of the [counterclaim] as true, and accept all reasonable inferences therefrom," we find Defendants have sufficiently stated a breach of contract claim against Cheney. *Omar*, 334 F.3d at 1247. More importantly, because Florida law permits extension of the non-compete period in order to achieve its intent, Count I of the Counterclaim did not become moot on February 19, 2009.

Therefore, motion to dismiss Counts I and II of the Counterclaim should be denied.

### B.   *Breach of Fiduciary Duty Claim*

The allegations in the Counterclaim state that Calkins breached the fiduciary duties he owed to Analytics when he provided Cheney assistance in establishing a competing business and by destroying thousands of computer files from Analytics' computer in order to conceal his disloyal actions. *See* Counterclaim ¶ 39.

The elements of a breach of fiduciary duty claim are: 1) the existence of a fiduciary duty; 2) the breach of that duty; and 3) damage proximately caused by that breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted). A

fiduciary relationship may be either express or implied. *See Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward. *See id.* A fiduciary relationship that is implied in law is based on the specific factual circumstances surrounding the transaction and the relationship of the parties. *See id.* Under Florida law, for an implied fiduciary relationship to exist "there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991). Also, the mere "fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.* (citing *Harris v. Zeuch*, 137 So. 135 (Fla. 1931); *Barnett Bank of W. Fla. v. Hooper*, 498 So. 2d 923 (Fla. 1986)).

"Corporate directors owe a fiduciary obligation to the corporation and to the stockholders and must act in good faith and in the best interests of the corporation." *Tillis v. United Parts, Inc.*, 395 So. 2d 618, 619 (Fla. 5th DCA 1981); *Snead v. U.S. Trucking Corp.*, 380 So. 2d 1075, 1078 (Fla. 1st DCA 1980) ("The relationship of a director and of an officer to the corporation and its stockholders is that of a fiduciary."). A mere employee of a corporation, however, "ordinarily does not occupy a position of trust unless he also serves as its agent." *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 644 (Fla. 2d DCA 1958); *see also Gregg v. U.S. Industries, Inc.*, 715 F.2d 1522, 1541

(11th Cir. 1983) (upholding trial court's conclusion that once an employee "was removed as president and chief operating officer of his former companies and made only a consultant he no longer had fiduciary duties" to the company) (applying Florida law).

Defendants argue that Calkins owed Analytics an express fiduciary duty as an employee of the company. In support of their contention, Defendants rely on a decision from this district in *Treasure Salvors, Inc. v. Unidentified, Wracked and Abandoned Sailing Vessel*, 556 F. Supp. 1319 (S.D. Fla. 1983), where the court found that a captain of a treasure hunting ship owed fiduciary duties to the company that employed him. *Id.* at 1339. Defendants' contention, however, that the *Treasure Salvors* decision holds that every employee/employer relationship is fiduciary in nature is misplaced. The court in *Treasure Salvors* found the relationship between the company and the captain as one of a principal and an agent. *Id.* Therefore, the captain owed fiduciary duties to the company with respect to the matters within his agency. *Id.* Contrary to Defendants' assertion, not every employee/employer relationship amounts to that of a principal and an agent. *See, e.g., In re E-Z Serve Convenience Stores, Inc.*, No. 02-83138, 2009 WL 901707, at * 6-7 (Bankr. M.D.N.C. March 26, 2009). "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006).

Finally, Calkins may have owed fiduciary duty to the company if Analytics was a law firm. *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 297 (2d Cir. 2000)

(members of a law firm owe fiduciary duty to the firm) (applying New York law). Defendants, however, expressly deny that Analytics was engaged in any practice of law.

The allegations in Count III of the Counterclaim fail to allege either express or implied fiduciary relationship between Calkins and Analytics. Accordingly, on the breach of fiduciary count, Plaintiffs/Counter-Defendants' motion to dismiss should be granted.

### C.  *Violation of the Computer Fraud and Abuse Act 18 U.S.C. § 1030(a)(5)(A)*

Plaintiffs argue that Defendants have failed to state a claim under CFAA because they have not alleged both damage and loss under the statute. According to Plaintiffs, Defendants' CFAA claim fails because it has not alleged that any loss arose from an "interruption in service." Finally, Plaintiffs argue that Plaintiff/Counter-Defendant Calkins cannot be liable under the statute because he had initial authorization to use Analytics' computer.

Under CFAA, a civil action may be maintained by "any person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). In order to prove a claim under subsection 1030(a)(5)(A),[2] a party must prove that a defendant knowingly caused "the transmission of a program, information, code, or command" and as a result of such conduct he caused damage without authorization to a protected computer. 18 U.S.C. § 1030(a)(5)(A). In addition, in order for a plaintiff to bring a civil

---

[2] Defendants/Counter-Plaintiffs are only alleging violation of 18 U.S.C. § 1030(a)(5)(A).

suit against a defendant pursuant to subsection 1030(a)(5)(A), the defendant's conduct must satisfy one of the statute's enumerated provisions.

In this case Defendants/Counter-Plaintiffs contend that Calkins' conduct caused loss to Analytics in excess of $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I).[3] A careful analysis of subsection 1030(c)(4)(A)(i)(I) in conjunction with subsection 1030(a)(5)(A) yields a conclusion that in order to state a claim under subsection 1030(a)(5)(A) a party must allege both "damage" and a "loss" aggregating at least $5,000 in value. *See, e.g., Lyons v. Coxcom, Inc.*, No. 08-CV-02047-H(CAB), 2009 WL 347285, at *7 (S.D. Cal. Feb. 6, 2009); *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442(FLW), 2009 WL 44748, at *2 (D.N.J. Jan 6, 2009) ("The provision relevant to financial loss mandates that at least one person suffers damage aggregating in at least $5,000.00 in value . . . ."). The statute defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The CFAA then defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, const incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

First, we conclude that the allegations in the counterclaim fail to allege a single

---

[3] Subsection 1030(g) expressly states that "a civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I). 18 U.S.C. § 1030(g). Subsections II-V of § 1030(c)(4)(A)(I) do not appear to be applicable to Defendants/Counter-Plaintiffs' claim.

fact that Analytics suffered "any impairment to the integrity or availability of data." The use of term "integrity" in the statute to define damage requires "some diminution in the completeness or useability of data or information on a computer system." *Resdev v. Lot Builders*, No. 6:04-CV-1374ORL31DAB, 2005 WL 1924743, at *5 (M.D. Fla. Aug. 10, 2005). Likewise, the use of word "availability" suggests that a party asserting a claim under subsection 1030(a) may prove damage by showing that defendant's actions somehow made certain data or program not readily obtainable.

Permanent deletion of files from a laptop computer without authorization, as Defendants/Counter-Plaintiffs allege in Count IV of their Counterclaim, may constitute "damage" under CFAA. *See, e.g., Pharmerica, Inc. v. Arledge*, No. 8:07-CV-486-T-26MAP, 2007 WL 865510, at *7-8 (M.D. Fla. Mar. 21, 2007) (permanent deletion of files from laptop computer without authorization violated subsection 1030(a)(5)). Plaintiff must also, however, allege that the deletion of files caused an "impairment to the integrity or availability of data." *See, e.g., Southeastern Mech. Sers., Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046, at *14 (M.D. Fla. Oct. 15, 2008) (Defendant caused impairment to the availability of data because the "deleted data has not been recovered."). In other words, deletion of files alone does not constitute "damage" under section 1030(a)(5)(5) if the deleted data is still available to the plaintiff through other means. Here, the CFAA claim merely asserts the destruction of files by Calkins but fails to allege how his actions caused an "impairment to the integrity or availability of data."

Second, although the CFAA claim alleges that "Analytics sustained a loss in excess of $5,000" due to the "costs incurred in conducting a damage assessment of the

computer and attempting to restore the data that Mr. Calkins destroyed," the claim fails to allege that Analytics suffered any "interruption of service." Plain reading of the definition of "loss" under the statute suggests that any "loss" must be related to interruption of service. *Cohen v. Gulfstream Training Acad., Inc.*, No. 07-60331-CIV, 2008 WL 961472, at *4 (S.D. Fla. Apr. 9, 2008) (noting lack of precedent on this issue from the Eleventh Circuit and acknowledging split among the courts on the issue whether any "loss" alleged under the CFAA must relate to "interruption of service"). Although, as Defendants/Counter-Plaintiffs assert, Calkins' destruction of files on his Analytics' computer may have been done in bad faith to "conceal various breaches of fiduciary duty, including assisting Cheney with his lawsuit against IPD Analytics and conspiring with Cheney to establish a business to compete with IPD Analytics," these allegations do not necessarily indicate that Analytics suffered any loss in service, as required under subsection 1030(e)(11).

Finally, we find Calkins' final argument that Analytics may not maintain a CFAA claim against him because he was authorized to use the computer without merit. Subsection 1030(a)(5)(A) provides a civil cause of action for a plaintiff against a party who caused "damage without authorization to a protected computer." Therefore, the fact that Calkins may have had initial authorization to *use* the computer does not immune him from liability under subsection 1030(a)(5)(A) for *causing damage* to the computer. *See, e.g., B & B Microscopes v. Armogida*, 532 F. Supp. 2d 744, 758 (W.D. Pa. 2007) (distinguishing between Section 1030 actions predicated upon unauthorized *access* of a protected computer from ones predicated upon unauthorized *damage* to a computer). Moreover, Counter-Plaintiffs' have alleged he was not an authorized user

in this respect.

However, because Count IV of the Counterclaim fails to sufficiently allege "damage" and "loss," as defined under the applicable statute, Plaintiffs/Counter-Defendants' motion to dismiss the CFAA claim should be granted.

### *III.   CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

1. Plaintiffs/Counter-Defendants' Motion to Dismiss Counts I and II of the Counterclaim should be **DENIED**.

2. Plaintiffs/Counter-Defendants' Motion to Dismiss Count III of the Counterclaim should be **GRANTED** and Count III should be **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiffs/Counter-Defendants' Motion to Dismiss Count IV of the Counterclaim should be **GRANTED** and Count IV should be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of April, 2009.

                                            */s/ Edwin G. Torres*
                                            EDWIN G. TORRES
                                            United States Magistrate Judge