# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23188-CIV-MORENO/TORRES

CLARK S. CHENEY and JAMES C.
CALKINS,

      Plaintiffs,

vs.

IPD ANALYTICS, L.L.C.,
INTELLECTUAL PROPERTY
DEVELOPMENT, INC., and
HOWARD BENJAMIN KRASS,

      Defendants.
_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## ON COUNT XIV OF THE SECOND AMENDED COMPLAINT
## AND COUNTS III AND V OF THE AMENDED COUNTERCLAIM

This matter is before the Court on Plaintiff James C. Calkins's Motion for Summary Judgment on Count XIV of the Second Amended Complaint[1] ("Plaintiff's Motion" or "Calkins's Motion") [D.E. 114] filed May 5, 2009; Defendants' Response in Opposition ("Defendants' Response") thereto [D.E. 207] filed July 22, 2009; and Plaintiff's Reply [D.E. 217] filed August 4, 2009. The Court has reviewed the motion,

---

[1] Technically, Calkins filed a Motion for Summary Judgment on Count XIV of the Second Amended Complaint and Counts III-IV of the Counterclaim. Subsequently, however, as a response to Plaintiffs' filing of their Second Amended Complaint, Defendants filed their Amended Counterclaim adding additional claims. [D.E. 203]. Therefore, Plaintiff's motion ultimately pertains to counts III and V of the Amended Counterclaim, instead of counts III and IV, as referred to in his motion.

the response, the reply, related authorities submitted by the parties, and the record in the case. For the foregoing reasons the motion for summary judgment should be denied in part and granted in part.

## I.    BACKGROUND

Plaintiff Clark Cheney ("Clark Cheney" or "Cheney") is a registered patent attorney and a member of the District of Columbia Bar. Plaintiff James Calkins ("James Calkins" or "Calkins") is also a registered patent attorney and a member of both the District of Columbia and Texas Bars. Defendant IPD Analytics, L.L.C. ("Analytics") engages in the business of reporting and analyzing patent litigation involving public companies. Defendant Intellectual Property Development, Inc. ("IPD") is the principal shareholder of Analytics. Defendant Howard Krass ("Krass") is the Chief Executive Officer of Analytics and the President of IPD.

Analytics' staff consists of attorneys who possess extensive experience in patent law, both as litigators and law clerks at the United States Court of Appeals for the Federal Circuit. Its attorneys closely monitor pending patent lawsuits and create reports that analyze and attempt to predict the possible outcome of each individual lawsuit. The reports also evaluate the scope, validity, and enforceability of a company's patent portfolio. Analytics, in turn, forwards these reports to its clients under a for-fee subscription agreement. Clients may also contact Analytics in person and ask its attorneys questions about a given report. A vast majority of Analytics' subscribers are hedge fund and mutual fund managers who utilize the patent litigation analysis in formulating their investment decisions.

Cheney and Calkins are both former employees of Analytics who, following their departure, incorporated their own company called "Paterus Law Group." The nature of Plaintiffs' business is essentially the same as Analytics, providing for-fee reports to their clients that analyze patent-related litigation of publicly traded companies.

Cheney filed this matter in June 2008, in the United States District Court for the District of Columbia, asserting claims for breach of contract, fraudulent inducement, promissory estoppel, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Subsequently, due to the presence of a valid forum selection clause in the underlying employment contract, the case was transferred to this district on October 10, 2008. On January 6, 2009, Cheney amended his complaint, adding James C. Calkins as a Co-Plaintiff.

The 15-Count Second Amended Complaint [D.E. 106] ("Amended Complaint") sought declaratory judgments that: 1) attorney-client relationship obligated Plaintiffs to communicate to their clients about their departure from the Defendant firm ("Count I"); 2) the non-competition paragraphs in Cheney's and Calkins's employment agreement were unenforceable ("Count II"); 3) non-hire paragraph of Defendants' subscription agreement was unenforceable ("Count III") and; 4) non-solicitation paragraphs in Cheney's and Calkins's employment agreement were unenforceable ("Count IV"). The Amended Complaint also asserted claims for: 1) breach of contract with Cheney ("Count V"); 2) fraudulent inducement of both Cheney and Calkins ("Counts VI and XIII"); 3) promissory estoppel with respect to Cheney ("Count VII"); 4) benefits due under ERISA 401(k) plan ("Count VIII"); 5) breach of fiduciary duty under ERISA ("Count IX"); 6) failure to transfer 401(k) assets under ERISA ("Count

X"); 7) failure to provide notice pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA") 29 U.S.C. § 1166 ("Count XI"); 8) retaliatory termination in violation of ERISA ("Count XII"); 9) failure to provide business records pursuant to Fla. Stat. § 608.4101 ("Count XIV"); and 10) failure to provide an employee with reasonable notice of employment termination under Florida law ("Count XV").

Defendants answered the Second Amended Complaint on July 13, 2009. [D.E. 203]. The answer included a Counterclaim against both Cheney and Calkins for violation of the Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*, as well as, individual claim against Cheney for breach of the non-competition agreement and three claims against Calkins for breach of the non-competition agreement, breach of fiduciary duty and violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030(a)(5)(A).

On May 28, 2009, the undersigned recommended granting summary judgment on counts I-V, VI (in part), and VIII-XIII of the Second Amended Complaint in favor of Defendants. [D.E. 143]. Judge Moreno adopted the Report and Recommendation on July 10, 2009. [D.E. 200]. Thus, in addition to all five counts of the Amended Counterclaim, the only remaining counts from the Second Amended Complaint are Count VI fraudulent inducement (equity ownership) claim, Count VII promissory estoppel claim, Count XIV Fla. Stat. § 608.4101 claim, and Count XV improper employment termination notice claim.

Now through the pending Motion, Calkins first argues that he is entitled to a judgment as a matter on law on his own Section 608.4101 "records inspection" claim

because there exists no genuine issue of material fact that, being a member of Defendant IPD Analytics, he was denied inspection of company's books and records in violation of the statute. Second, Calkins contends that summary judgment should be entered in his favor on the breach of fiduciary duty count of the Amended Counterclaim. In support of this contention, Calkins argues that he did not owe fiduciary duty to the Defendant company and even if he did, he did not breach that duty. Finally, Calkins argues that he also should be granted summary judgment on the CFAA count in the counterclaim because undisputed evidence demonstrates that Defendants have failed to establish certain necessary elements under the statute. Namely, Calkins argues that: 1) Defendants have failed to prove that his deletion of the files caused an "impairment to the integrity or availability of data;" 2) Defendants have failed to establish that Analytics suffered a loss of at least $5,000; and 3) no genuine issue of material fact exists that Analytics has not suffered an "interruption in service."

Defendants oppose Calkins's motion on all three counts. Defendants contend that the "records inspection" claim is moot because the requested documents were produced during the discovery process in this case. Alternatively, Defendants argue that Analytics had a statutory right to restrict Calkins's access to its records. As to the "breach of fiduciary duty" count, Defendants maintain Calkins owed Analytics fiduciary duty because evidence on record establishes, or at least creates an issue of fact, that Calkins acted as an agent of Analytics. Defendants also maintain that evidence on record also creates an issue of fact as to whether Calkins committed a breach of such duty. Likewise, as to the CFAA claim, Defendants contend that there

exists sufficient evidence on record to create an issue of fact as to the elements of that claim. Therefore, according to Defendants, Calkins's motion for summary judgment should be denied on the CFAA count.

## *II. ANALYSIS*

### A.  *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

B.  *Count XIV - Claim Under Fla. Stat. § 608.4101*

Section 608.4101 provides in pertinent part:

(3)  A limited liability company shall furnish to a member, and to the legal representative of a deceased member or member under legal disability:

(a)  Without demand, information concerning the limited liability company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter; and

(b)  On demand, other information concerning the limited liability's company's business or affairs, except to the extend the demand or the information demanded is unreasonable or otherwise improper under the circumstances.

(4) . . . . The manager of a limited liability company shall have the right to keep confidential from the members, for such period of time as the manager deems reasonable, any information which the manager reasonably believes to be in the nature of trade secrets or other information the disclosure of which the manager in good faith believes is not in the best interest of the limited liability company or could damage the limited liability company or its business . . . .

Fla. Stat. § 608.4101(3)-(4).  The statute essentially imposes a duty on a limited liability company, such as IPD Analytics, to allow its members access to certain information, mainly financial records and data.  *See, e.g., Fla. Estate Developers, LLC v. Ben Tobin Co., Ltd.*, 964 So. 2d 238, 240 n.1 (Fla. 4th DCA 2007) (tax returns and financial statements).

It is undisputed that Calkins is a member of IPD Analytics and owns units representing about 2.5% of the company.  It is also undisputed that on January 27, 2009, Calkins requested from Analytics: 1) current client database; 2) documents filed with the Department of State such as articles of organization or certificates of conversion; 3) income tax returns; 4) current operating agreement and financial

statements. *See* Pl.'s Ex. B [D.E. 114]. On February 23, 2009, Defendant Analytics agreed to Calkins's request but conditioned the access to these documents on Calkins's express assurance that the information obtained will not be shared with any other person, to include Co-Defendant Cheney. *See* Pl.'s Ex. D [D.E. 114]. Calkins contends, however, that under the statute he has no obligation to assume any additional restrictions that Analytics seeks to impose upon him before allowing access to the company's records. *See* Pl.'s Mot. for Summ. J. at 2 [D.E. 114].

Although Calkins is right that subsection (3) of the statute grants a member of a limited liability company an unrestricted access to the company's records, subsection (4) also limits that access by giving the manager of the company a discretion to withhold such information if he "in good faith believes" such disclosure is not in the best interest of the company. In his reply, Calkins argues that Analytics may not rely on subsection (4) as a basis for the restrictive release of the documents. He points out there is no evidence on record that would support a finding that the manager of Analytics "reasonably" and "in good faith" believes that a disclosure of the documents would not be in the best interest of the company.

The argument, however, misses the point as it clearly overlooks the obvious nature of this case and the claims asserted. Indeed, there is no "self-serving" affidavit on record from Analytic's manager attesting that his reasons for the withholding of the requested documents were precisely those listed under Subsection (4). Instead, there is a pending direct claim against Calkins for breach of his employment agreement's non-competition covenant. Analytics's manager's actions in light of the pendency of this claim is sufficient to create an issue of fact whether such actions were "reasonable"

or done "in good faith." We find that Section 608.4101 should be resolved by a trier of fact together with the breach of contract claim.

Therefore, we conclude that Plaintiff's Motion for Summary Judgment on Count XIV of the Amended Complaint should be denied.

### C. *Count III - Counterclaim for Breach of Fiduciary Duty*

The elements of a breach of fiduciary duty claim are: 1) the existence of a fiduciary duty; 2) the breach of that duty; and 3) damage proximately caused by that breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted). A fiduciary relationship may be either express or implied. *See Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward. *See id.* A fiduciary relationship that is implied in law is based on the specific factual circumstances surrounding the transaction and the relationship of the parties. *See id.*

In arguing that he is entitled to summary judgment on this count, Calkins relies on the fact that, as a mere employee of the company, he did not owe any fiduciary duties to Analytics, either express or implied. Defendants oppose the motion contending that Calkins's express fiduciary duty to Analytics stemmed from his role as the agent of the company. Defendants' only proffered evidence that supports this agency argument is the fact that Calkins's duties as an employee of Analytics included "recruiting and training other analysts and communicating with IPD Analytics' subscribers regarding reports published by IPD Analytics." *See* Defs.' Mot. in Opp. at 6 (citing Calkins's Depo. at 83-87 [D.E. 107-4]) [D.E. 207].

In Florida, existence of agency status is a question of fact, except in those cases where the party opposing summary judgment is unable to point to any conflicting facts or inferences to be drawn from the facts. *M.S. v. Nova Southeastern University Inc.*, 881 So. 2d 614, 617 (Fla. 4th DCA 2004); *see also Robinson v. Linzer*, 758 So. 2d 1163 (Fla. 4th DCA 2000) (holding inconsistent contractual terms create issue of fact as to agency relationship between a hospital and a physician); *Robbins v. Hess*, 659 So. 2d 424, 427 (Fla. 1st DCA 1995) ("Generally, the issue of agency or apparent agency is a question of fact to be determined by a jury. The question can be resolved by summary judgment in only those cases where the evidence is capable of but one determination.").

The existence of an agency relationship between the parties requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003) (applying Florida law).

Therefore, in order to satisfy the first element for the existence of an express agency relationship, the party attempting to establish its existence must show that the principal specifically authorized its agent to take certain actions. *Pardo v. Tanning Research Labs., Inc.*, 996 F. Supp. 1222, 1225 (M.D. Fla. 1998) (citing *Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 885 (11th Cir. 1983)).

Defendants fail to proffer a single piece of evidence that would suggest that Analytics expressly authorized, either orally or contractually (i.e. employment contract) that Calkins act on its behalf. Defendants merely point to Calkins's own testimony where he acknowledges participating in interviewing potential analysts and training

newly hired staff. Nowhere in the cited deposition does Calkins testify that he was authorized to act on the company's behalf as its agent. Furthermore, and quite tellingly, Defendants have not proffered any evidence on their own behalf supporting their burden of proof, such as an affidavit of the company's representative, that expressly states that Analytics authorized Calkins to act on the company's behalf for any purpose at any given time.

As a consequence, Defendants have failed to set forth specific facts showing that there is a genuine issue for trial whether agency relationship existed between Calkins and Analytics. *Liberty Lobby, Inc.*, 477 U.S. at 248. This record can only support the finding that no such agency relationship existed, beyond a traditional employer-employee relationship that does not generate a fiduciary relationship. Therefore, Plaintiff's Motion for Summary Judgment on Count III of the Amended Counterclaim should be granted.

    **D.**    *Count V - Counterclaim Under the CFAA*

Under CFAA, a civil action may be maintained by "any person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). In order to prove a claim under subsection 1030(a)(5)(A),[2] a party must prove that a defendant knowingly caused "the transmission of a program, information, code, or command" and as a result of such conduct he caused damage without authorization to a protected computer. 18 U.S.C. § 1030(a)(5)(A). In addition, in order for a plaintiff to bring a civil

---

[2]    Defendants/Counter-Plaintiffs are only alleging violation of 18 U.S.C. § 1030(a)(5)(A).

suit against a defendant pursuant to subsection 103)(a)(5)(A), the defendant's conduct must satisfy of the statute's enumerated provisions.

In this case Defendants/Counter-Plaintiffs alleged that Calkins's conduct caused loss to Analytics in excess of $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I).[3] Therefore, in order to prevail on a claim under subsection 1030(a)(5)(A) a party must show both "damage" and a "loss" aggregating at lest $5,000 in value. *See, e.g., Lyons v. Coxcom, Inc.*, 08-CV-02047-H(CAB), 2009 WL 347285, at *7 (S.D. Cal. Feb. 6, 2009); *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442(FLW), 2009 WL 44748, at *2 (D.N.J. Jan. 6, 2009) ("The provision relevant to financial loss mandates that at least one person suffers damage aggregating in at least $5,000 in value . . . ."). The statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The CFAA then defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Furthermore, the use of the term "integrity " in the statute to define damage requires "some diminution in the completeness or useability of data or information on

---

[3] Subsection 1030(g) expressly states that "a civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). 18 U.S.C. § 1030(g). Subsections II-V of Section 1030(c)(4)(A)(I) do not appear to be applicable to Count V counterclaim.

a computer system." *Resdev v. Lot Builders*, No. 6:04-CV-1374ORL31DAB, 2005 WL 1924743, at *5 (M.D. Fla. Aug. 10, 2005). Likewise, the use of word "availability" suggests that a party asserting a claim under subsection 1030(a) may prove damage by showing that defendant's actions somehow made certain data or program not readily obtainable. *Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667, 678 (E.D. Tex. 2001) ("'[A]vailability' means 'suitable or ready for use . . . at hand . . . readily attainable . . . accessible.'") (quoting Webster's Collegiate Dictionary (10th ed. 1993)).

Calkins moves for summary judgment on the CFAA counterclaim contending that Analytics did not suffer "damage" because there is no evidence of "any impairment to the integrity or availability of data." Calkins also contends that Analytics did not suffer a "loss" as a result of interruption in service aggregating at least $5,000 in value.

### 1. *"Damage"*

Permanent deletion of files from a laptop computer without authorization may constitute "damage" under CFAA. *See, e.g., Pharmerica, Inc. v. Arledge*, No. 8:07-CV-486-T-26MAP, 2007 WL 865510, at *7-8 (M.D. Fla. Mar. 21, 2007) (permanent deletion of files from laptop computer without authorization violated subsection 1030(a)(5)). Deletion of files alone, however, does not constitute "damage" under section 1030(a)(5) if the deleted data is still available to the plaintiff through other means. *See, e.g., Southeastern Mech. Servs., Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046, at *14 (M.D. Fla. Oct 15, 2008) (Defendant caused impairment to the availability of data because the "[deleted] data has not been recovered.").

There is no dispute that Calkins deleted certain files from Analytics' laptop computer that was assigned to him. There remains a dispute of fact, however, whether any of the deleted data is still available to Analytics on its server. Defendants have proffered the testimony of Howard Krass, Analytics' 30(b)(6) representative, where he claims that "some of the files that Calkins deleted are on the server, others are not." *See* Deposition of Howard Krass at 268-69 [D.E. 114 at 32]. Although Calkins points to certain inconsistencies in Krass's deposition regarding what constitutes Calkins's "work product," the credibility of his testimony must ultimately be resolved by a trier of fact. We therefore conclude that Defendants have proffered sufficient evidence to create a triable issue of fact whether Calkins's deletion of files constituted "damage" to Analytics under CFAA.

### *2. "Loss" as a result of "Interruption of Service"*

"Courts have consistently interpreted 'loss' to mean a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *Frees, Inc. v. McMillian*, No. 05-1979, 2007 WL 2264457, at *3 (W.D. La. Aug. 6, 2007). Therefore, any "loss" must result from an "interruption in service." *Cohen v. Gulfstream Training Acad., Inc.*, No. 07-60331-CIV, 2008 WL 961472, at *4 (S.D. Fla. Apr. 9, 2008). Contrary to Calkins's interpretation of the statute, only interruption in service of the computer or its data is necessary, not interruption of one's business activities as a whole. *See, e.g., Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) ("[T]he meaning of 'loss,' both before and after the term was defined by statute, has consistently meant a cost of investigating or

remedying damage to a computer, or a cost incurred because the *computer's service was interrupted*.") (emphasis added).

As previously noted, Defendants have proffered sufficient evidence to create a triable issue of fact on whether certain "work product" documents erased by Calkins were not duplicated on Analytics' server. Therefore, any costs associated with recreating these documents would constitute a "loss" as a result of "interruption of service" of Analytics' laptop computer assigned to Calkins.

### 3. "Aggregating at Least $5,000 in Value"

The CFAA also requires the claimant to prove that the "loss" aggregated at least $5,000 in value during any 1-year period to one or more individuals. 18 U.S.C. § 1030(c)(4)(A)(i)(I). Furthermore, in order to prevail under CFAA, the claimant must adduce cognizable evidence of a quantifiable amount in excess of $5,000. *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1113 (C.D. Cal. 2007) (plaintiff must "quantify its harm as required by the [CFAA] statute.")

During his deposition, Analytics' corporate representative was unable to testify as to the actual amount of damages that the company suffered as a result of Calkins's alleged actions. Defendants, however, have submitted with their response to Calkins's summary judgment motion a declaration of Peter Mangano, Analytics' Chief Operating Officer, who states that the company's total cost of recreating the "work product" allegedly destroyed by Calkins amounted to $248,680. *See* Declaration of Peter Mangano at 1 [D.E. 207-4]. Mangano also attaches a spreadsheet that lists the hours individual analysts performed during this process. Although his statements are somewhat conclusory, we find his sworn statements sufficient to create a genuine issue

of material fact with regards to the damages issue. Clearly, at trial, in order to prevail on this claim Defendants may have to proffer more detailed and specific evidence to convince the trier of fact that any real loss occurred in this respect, and only such evidence that heretofore was produced to Calkins in discovery. *See, e.g., America Online, Inc. v. Nat. Health Care Discount, Inc.*, 174 F. Supp. 2d 890, 899-901 (N.D. Iowa 2001) (detailing evidence demonstrating damage incurred by plaintiff in amounts exceeding $5,000 in each of three years as result of defendant's transmission of unsolicited e-mail in violation of CFAA).

For summary judgment purposes, however, we find that Defendants have satisfied their burden of showing that there is a genuine issue of fact on this question, such that they should be able to present such proof to the trier of fact. Therefore, we conclude that Plaintiff's Motion for Summary Judgment on Count V of the Amended Counterclaim should be denied.

### III.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

1.  Plaintiff's Motion for Summary Judgment [D.E. 114] should be **GRANTED IN PART AND DENIED IN PART**.

2.  Plaintiff's Motion for Summary Judgment on Count XIV of the Amended Complaint should be **DENIED**.

2.  Plaintiff's Motion for Summary Judgment on Count III of the Amended Counterclaim should be **GRANTED**.

3.  Plaintiff's Motion for Summary Judgment on Count V of the Amended Counterclaim should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have five (5) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Given the imminent trial date, the Court finds good cause to expedite the time for filing objections, if any.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers, at Miami, Florida, this 28th day of August, 2009.

                                           */s/ Edwin G. Torres*
                                           EDWIN G. TORRES
                                           United States Magistrate Judge