**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 08-23188-CIV-MORENO/TORRES

CLARK S. CHENEY and JAMES C.
CALKINS,

        Plaintiffs,

vs.

IPD ANALYTICS, L.L.C.,
INTELLECTUAL PROPERTY
DEVELOPMENT, INC., and
HOWARD BENJAMIN KRASS,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**ON COUNT IV OF THE AMENDED COUNTERCLAIM**

This matter is before the Court on Plaintiffs James C. Calkins and Clark S. Cheney Motion for Summary Judgment on Count IV of the Amended Counterclaim ("Plaintiffs' Motion") [D.E. 273] filed September 19, 2009; Defendants' Response in Opposition ("Defendants' Response") thereto [D.E. 285] filed October 5, 2009; and Plaintiffs' Reply [D.E. 290] filed October 15, 2009. The Court has reviewed the motion, the response, the reply, related authorities submitted by the parties, and the record in the case. For the foregoing reasons the motion for summary judgment should be denied

## I.   BACKGROUND

Plaintiff Clark Cheney ("Clark Cheney" or "Cheney") is a registered patent attorney and a member of the District of Columbia Bar. Plaintiff James Calkins ("James Calkins" or "Calkins") is also a registered patent attorney and a member of both the District of Columbia and Texas Bars. Defendant IPD Analytics, L.L.C. ("Analytics") engages in the business of reporting and analyzing patent litigation involving public companies. Defendant Intellectual Property Development, Inc. ("IPD") is the principal shareholder of Analytics. Defendant Howard Krass ("Krass") is the Chief Executive Officer of Analytics and the President of IPD.

Analytics' staff consists of attorneys who possess extensive experience in patent law, both as litigators and law clerks at the United States Court of Appeals for the Federal Circuit. Its attorneys closely monitor pending patent lawsuits and create reports that analyze and attempt to predict the possible outcome of each individual lawsuit. The reports also evaluate the scope, validity, and enforceability of a company's patent portfolio. Analytics, in turn, forwards these reports to its clients under a for-fee subscription agreement. Clients may also contact Analytics in person and ask its attorneys questions about a given report. A vast majority of Analytics' subscribers are hedge fund and mutual fund managers who utilize the patent litigation analysis in formulating their investment decisions.

Cheney and Calkins are both former employees of Analytics who, following their departure, incorporated their own company called "Paterus Law Group." The nature of Plaintiffs' business is essentially the same as Analytics, providing for-fee reports to their clients that analyze patent-related litigation of publicly traded companies.

Cheney filed this matter in June 2008, in the United States District Court for the District of Columbia, asserting claims for breach of contract, fraudulent inducement, promissory estoppel, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Subsequently, due to the presence of a valid forum selection clause in the underlying employment contract, the case was transferred to this district on October 10, 2008. On January 6, 2009, Cheney amended his complaint, adding James C. Calkins as a Co-Plaintiff.

The 15-Count Second Amended Complaint [D.E. 106] ("Amended Complaint") sought declaratory judgments that: 1) attorney-client relationship obligated Plaintiffs to communicate to their clients about their departure from the Defendant firm ("Count I"); 2) the non-competition paragraphs in Cheney's and Calkins's employment agreement were unenforceable ("Count II"); 3) non-hire paragraph of Defendants' subscription agreement was unenforceable ("Count III") and; 4) non-solicitation paragraphs in Cheney's and Calkins's employment agreement were unenforceable ("Count IV"). The Amended Complaint also asserted claims for: 1) breach of contract with Cheney ("Count V"); 2) fraudulent inducement of both Cheney and Calkins ("Counts VI and XIII"); 3) promissory estoppel with respect to Cheney ("Count VII"); 4) benefits due under ERISA 401(k) plan ("Count VIII"); 5) breach of fiduciary duty under ERISA ("Count IX"); 6) failure to transfer 401(k) assets under ERISA ("Count X"); 7) failure to provide notice pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA") 29 U.S.C. § 1166 ("Count XI"); 8) retaliatory termination in violation of ERISA ("Count XII"); 9) failure to provide business records pursuant to

Fla. Stat. § 608.4101 ("Count XIV"); and 10) failure to provide an employee with reasonable notice of employment termination under Florida law ("Count XV").

Defendants answered the Second Amended Complaint on July 13, 2009. [D.E. 203]. The answer included a Counterclaim against both Cheney and Calkins for violation of the Uniform Trade Secrets Act ("UTSA"), Fla. Stat. § 688.001 *et seq.*, as well as, individual claim against Cheney for breach of the non-competition agreement and three claims against Calkins for breach of the non-competition agreement, breach of fiduciary duty and violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030(a)(5)(A).

On May 28, 2009, the undersigned recommended granting summary judgment on counts I-V, VI (in part), and VIII-XIII of the Second Amended Complaint in favor of Defendants. [D.E. 143]. Judge Moreno adopted the Report and Recommendation on July 10, 2009. [D.E. 200]. Thus, in addition to all five counts of the Amended Counterclaim, the only remaining counts from the Second Amended Complaint are Count VI fraudulent inducement (equity ownership) claim, Count VII promissory estoppel claim, Count XIV Fla. Stat. § 608.4101 claim, and Count XV improper employment termination notice claim.

Now through the pending Motion, Plaintiffs contend that they are entitled to a judgment as a matter on law on the Count IV UTSA counterclaim. In support of their contention, Plaintiffs first argue that by asserting the trade secret privilege to resist discovery, Defendants have waived their UTSA claim. Second, Plaintiffs contend that Defendants' description of the alleged trade secrets is too vague to state a claim for

which relief may be granted. Third, Plaintiffs claim that the materials alluded to in the Amended Counterclaim are not trade secrets as a matter of law. Fourth, Plaintiffs contend that because Florida law does not apply to Defendants' allegations, Plaintiffs are entitled to summary judgment on the Florida UTSA statutory claim. Finally, Plaintiffs argue that prejudice to them that stems from Defendants' avoidable delay in brining their trade secret claim forecloses recovery.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### B. <u>Count IV of the Counterclaim - Claim Under Fla. Stat. § 688.001 et seq.</u>

To show misappropriation of a trade secret under the Florida Uniform Trade Secret Act, a claimant must prove that: 1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy; and 2) the secret it possessed was misappropriated. *See* Fla. Stat. § 688.002; *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2006). In a trade secret action, the plaintiff bears the burden of demonstrating the specific information it seeks to protect is a trade secret. *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998).

#### 1. *Waiver*

Plaintiffs contend that Defendants have waived their UTSA claim when they asserted trade secret privilege during the discovery. Plaintiffs are correct that when a party asserts a claim under the UTSA, thus placing the trade secrets at issue, it essentially waives its right to assert the trade secret privilege in discovery. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324 (S.D. Fla. 2001). However, it is not clear why Plaintiffs waited until the summary judgment stage of the proceedings to raise Defendants' alleged improper assertion of the trade secret privilege.

A careful review of the record indicates that the UTSA claim was pled for the first time on July 13, 2009 when Defendants filed their Amended Answer and

Amended Counterclaim to Second Amended Complaint [D.E. 203].  Indeed, prior to that time, Defendants have asserted their trade secrets privilege to shield themselves from production of various documents.  Upon Plaintiffs' motion to compel, we sustained some of Defendants' objections [D.E. 181].  After the UTSA claim was asserted, however, Plaintiffs never moved to reopen discovery in order to renew their motion to compel to challenge Defendants' allegedly improper assertion of the trade secret privilege.  *See, e.g., Del Monte Fresh Produce Co.*, 148 F. Supp. 2d at 1324.  Instead of raising this issue as a discovery matter earlier in the proceedings, Plaintiffs waited until the summary judgment stage to essentially utilize the alleged discovery violation as a complete defense to the counterclaim.  *Cf. id.* (granting motion to compel discovery about the alleged trade secrets).  Clearly, Plaintiffs' argument has no merit as it would render most of Fed. R. Civ. P. 26 useless and would encourage parties to resolve their discovery disputes at the summary judgment stage.  Furthermore, it appears that Plaintiffs have still acquired a sufficient amount of discovery that will enable them to effectively assert a cognizable defense to the UTSA claim.  Therefore, we conclude that the UTSA claim is not waived.

### 2. *Failure to State a Claim Under UTSA*

A party asserting trade secret protection must describe the allegedly misappropriated trade secrets with reasonable particularity.  *Id.* at 1325. We find that Defendants have satisfied this burden. Namely, the Amended Counterclaim expressly alleges that while Plaintiff Calkins was employed by Analytics he entered its offices at night and copied thousands of files from the server, including masses of research, compilations, and other documents relating to the business of Analytics with which

Calkins had decided to compete along with Plaintiff Cheney. *See* Am. Countercl. ¶ 23 [D.E. 203]. These documents included various research, compilations and customer information. *Id.* ¶ 53. These allegations are sufficient to state a claim.

### 3. *Whether the Allegedly Misappropriated Materials are Trade Secrets*

Whether a particular type of information constitutes a trade secret is a question of fact. *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998) (applying Georgia law). Under Florida's Uniform Trade Secrets Act, a trade secret consists of information that: 1) derives economic value from not being readily ascertainable by others and 2) is the subject of reasonable efforts to maintain its secrecy. *See* Fla. Stat. § 688.002(4). Thus, information that is generally known or readily accessible to third parties cannot qualify for trade secret protection. *American Red Cross*, 143 F.3d at 1410.

A careful review of the record shows that Defendants have proffered sufficient evidence to create a triable issue of fact on whether Defendants' research, compilation or customer information constitutes a "trade secret." For example, with regard to the alleged misappropriation of Analytic's customer information, there exists ample authority that holds that the term "trade secrets" includes active customer lists. *See, e.g., Cytodyne Tech., Inc. v. Biogenic Tech., Inc.*, 216 F.R.D. 533, 536 (M.D. Fla. 2003) (citing *Sethscot Collection v. Drbul*, 669 So. 2d 1076 (Fla. 3d DCA 1996)); *see also Unistar Corp. v. Child*, 415 So. 2d 733, 734 (Fla. 3d DCA 1982) (finding customer list to be trade secret where list was "distillation of a larger list of financial planners, reflecting considerable effort, knowledge, time and expense on the part of the plaintiff").

A question of fact, therefore, exists as to whether the customer information here raises to the level of a protected trade secret.

### 4. Choice of Law

Next, Plaintiffs contend that, because District of Columbia law and not Florida law applies to this action, they are entitled to summary judgment on Florida's UTSA claim.

According to Florida conflict of laws analysis, a court must determine which sovereigns have an interest in applying their laws and then consider, as a threshold issue, whether there is a "true conflict" between the jurisdiction with an interest in a particular issue or if there is merely a "false conflict." *Federacion Nacional Autonoma de Futbol de Honduras v. Traffic Sports USA, Inc.*, No. 08-21505-MC, 2008 WL 4056295, at *3 (S.D. Fla. Aug. 29, 2008). A "false conflict" between laws can exist: 1) where the laws of the different sovereigns are the same; 2) where the laws of the different sovereigns are different but would produce the same outcome under the facts of the case; or 3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws. *Estate of Miller v. Thrifty Rent-A-Car System, Inc.*, 637 F. Supp. 2d 1029, 1036 (M.D. Fla. 2009) (internal citations omitted). If only a "false conflict" exists, the courts in this district will apply the forum Florida law. *See, e.g., Pycsa Panama, S.A. v. Tensar Earth Technologies, Inc.*, 625 F. Supp. 2d 1198, 1219 (S.D. Fla. 2008).

The parties essentially do not dispute that both Florida and District of Columbia have an interest in applying their respective version of the UTSA. Defendants, however, contend that any conflict of law that may exist here is a "false conflict" as

both the Florida and District of Columbia versions of the UTSA are nearly identical and would therefore render identical results. We agree.

The language of the respective statutes in Florida and District of Columbia are virtually identical because both jurisdiction have adopted the UTSA. *See* Fla. Stat. §§ 688.001 *et seq.* & D.C. Code §§ 36-401 *et seq.* Furthermore, courts in the District of Columbia have expressly noted that "it is particularly appropriate to look to the Trade Secrets Act decisions in other jurisdictions [that have adopted the UTSA] because the D.C. statute was intended to 'make uniform the law with respect to trade secrets among the District of Columbia and those states enacting it,' D.C. Code § 36-408." *Catalyst & Chem. Serv., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 7 n.3 (D.D.C. 2004).

Therefore, we conclude that there is no need for the choice of law analysis because we find that the outcome will be the same under the substantive law of either jurisdiction. *See, e.g., Am. Family Mut. Ins. Co. v. Hollander*, No. C08-1039, 2009 WL 535990, at *12 (N.D. Iowa Mar. 3, 2009) (finding it "unnecessary to engage in a detailed analysis of choice of law rules" because "[t]he Iowa Uniform Trade Secrets Act . . . and the Wisconsin Uniform Trade Secrets Act . . . are both derived from the Uniform Act and are substantially identical in their definition of 'trade secrets.'"); *RF Tech. Corp. v. Applied Microwave Tech., Inc.*, 369 F. Supp. 2d 17, 22 n.5 (D. Me. 2005) ("The Court notes that Iowa trade secret law is also based upon the Uniform Trade Secrets Act and contains the same definition of a trade secrets as Maine . . . . The Court need not resolve any choice of law issue if the 'outcome is the same under the substantive law of either jurisdiction.'").

### 5. *Due Process*

Finally, apparently encompassing all previously cited arguments, Plaintiffs argue that their due process rights have been prejudiced by Defendants' vague pleading and by their refusal to produce relevant discovery. Plaintiffs also contend that they have been prejudiced by Defendants' delay in filing their UTSA counterclaim. Plaintiffs' argument has no merit. Defendants' Amended Counterclaim that asserted the UTSA claim was essentially a byproduct of Plaintiffs' own actions when they filed their Second Amended Complaint that included additional Florida statutory claims against Defendants. Because we found that, if successful, Plaintiffs' additional statutory claims would provide them with additional damages, we granted Defendants leave to file their Amended Counterclaim that, similarly to Plaintiffs' Second Amended Complaint, asserted additional statutory causes of action.

### III.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Plaintiffs' Motion for Summary Judgment on Count IV of the Amended Counterclaim [D.E. 273] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have five (5) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Given the imminent trial date, the Court finds good cause to expedite the time for filing objections, if any. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v.*

*Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers, at Miami, Florida, this 25th day of November, 2009.

                                                      */s/ Edwin G. Torres*
                                                     EDWIN G. TORRES
                                                     United States Magistrate Judge